UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

NIGHT BOX
FILED

AUG 3 0 1999

CLERK, USDC / SDFL / WPB

RUSSELL F. BOEHM,

      Plaintiff,

v.

TPI, INC., d/b/a Trader Publishing Company
a/k/a Trader Publications Inc., a foreign
corporation;
      Defendant.

CASE NO. 99-8550-CV-DIMITROULEAS

### DEFENDANT'S MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTION FOR REMAND ON GROUNDS OF DEFECTIVE REMOVAL AND LACK OF SUBJECT MATTER JURISDICTION

Defendant hereby files this Memorandum in response to Plaintiff's Motion for Remand on Grounds of Defective Removal and Lack of Subject Matter Jurisdiction and Plaintiff's request for an award of attorneys fees and costs pursuant to 28 U.S.C. section 1447(c), contained therein, as follows:

### I. BACKGROUND

On June 11, 1999, Plaintiff Russell Boehm ("Plaintiff"), filed this action in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. The Complaint purports to state claims for age discrimination, sex discrimination and retaliation in violation of the Florida Civil Rights Act of 1992 ("FCRA"), as amended, Chapter 760, *Fla. Stats.* The Complaint further alleges that "the amount in controversy exceeds $15,000 exclusive of interest, costs and attorneys fees." *See* Complaint at ¶2.



In the Complaint, Plaintiff fails to allege Plaintiff's residency or citizenship. However prior to filing his Complaint on June 11, 1999, Plaintiff was employed by Defendant from August 1994 to February 1997 as a sales manager in Defendant's West Palm Beach office and resided in Florida. Moreover, in Plaintiff's underlying charge filed with the Equal Employment Opportunity Commission on December 15, 1997, Plaintiff listed his address as 9676-A Boca Gardens Parkway, Boca Raton, Florida 33496.

On July 14, 1999, Defendant, a citizen of Georgia and Delaware,[1] filed a Notice of Removal removing the action to this court on the basis of diversity of citizenship, reasonably believing that Plaintiff's residency remained in Florida. On the civil cover sheet removing this case, Defendant listed as the basis for diversity jurisdiction *only* "28 U.S.C. Section 1332-- Diversity of citizenship and amount in controversy." In the body of Defendant's Notice of Removal, Defendant relied solely on Title 28 U.S.C. Section 1332 as the basis for its removal. On July 19, 1999 the Court *sua sponte* issued an order ordering Defendant to establish that the amount in controversy in the present action is in an excess of $75,000 by supplementing the record with affidavits or other documents on or before July 19, 1999. In this Court's Order, the Court clearly noted that "the Defendant alleged that this Court has jurisdiction over the above-referenced case because of diversity of citizenship pursuant to 28 U.S.C. §1332."

On July 27, 1999, counsel for Defendant sent a letter via facsimile to counsel for Plaintiff enclosing a stipulation regarding damages sought. In the letter, attached as Exhibit A hereto,

---

[1] The actual employer in this case is Trader Publishing Company. Trader Publishing Company is a general partnership comprised of LTM, Company, L.P., and TPI, Inc. TPI, Inc. is a Delaware corporation with its principal place of business in Georgia. LTM Company L.P. is a Virginia limited partnership.

2

counsel for Defendant requested that counsel for Plaintiff execute an enclosed stipulation stating that Plaintiff was seeking in excess of $75,000, in light of the Court's Order and the fact that Plaintiff's FCRA allegations indisputably sought in excess of $75,000. On July 28, 1999, counsel for Plaintiff sent a response letter to counsel for Defendant via facsimile refusing to execute the stipulation and indicating that "at this time, outside the allegation made in paragraph two of the complaint, we do not know the amount of damages sought in this action." A copy of the response letter is attached as Exhibit B hereto. **At no time, either in that letter, nor in any telephone call to counsel for Defendant, did counsel for Plaintiff disclose that Plaintiff was no longer a Florida resident**.

On July 29, 1999, Defendant timely filed the Declaration of Cindy Mullis and Response to Order setting forth that the amount in controversy in this case would more likely than not exceed the jurisdictional amount of this Court on the basis that:

1. Plaintiff's Complaint seeks back pay, front pay, compensatory and punitive damages of an unspecified amount plus attorneys fees on three separate claims of age discrimination, sex discrimination and retaliation under the FCRA.

2. Plaintiff was discharged from employment in February 1997. At the time Plaintiff was discharged, his annual salary was $41,600 (Mullis Dec. ¶3), and, assuming this case proceeded to trial within 180-269 days of the Scheduling Order, as set forth in S.D. Fla. L.R. 16.1(2)(b) for cases assigned to a standard track, Plaintiff will more likely than not seek a minimum of three years of back pay in addition to damages. Based upon Plaintiff's annual salary, Plaintiff will more likely than not be seeking approximately $124,000 in back pay alone.

3. Compensatory damages are unlimited under the FCRA, while punitive damages are limited to $100,000. *Fla. Stat.* §760.11(5). Numerous jury awards in FCRA cases have exceeded hundreds of thousands of dollars exclusive of attorneys' fees and costs.

**Plaintiff filed nothing in response or in rebuttal.**

On August 13, 1999, Plaintiff filed the subject Motion for Remand on Grounds of Defective Removal and Lack of Subject Matter Jurisdiction. In the Motion, Plaintiff additionally seeks an award of attorneys fees and costs pursuant to 28 U.S.C. §1447(c). On the tenth page of its Motion, Plaintiff discloses, for the first time ever, that a little over one month before filing this lawsuit, Plaintiff moved to Georgia.[2]

## II.  LAW

Despite Plaintiff's belated revelation that he engaged in certain indicia of domicile in Georgia prior to filing his Complaint and certain others prior to the Notice of Removal, it is Plaintiff's burden to show that his move to Georgia such a short time before filing his lawsuit constitutes Georgia domicile for purposes of establishing lack of diversity. Such a finding is discretionary with this Court. Defendant, however, has clearly met its burden that the amount in controversy of this case exceeds $75,000, and Plaintiff's arguments to the contrary are disingenuous at best. Finally, an award of fees and costs against Defendant would be wholly unwarranted in this case since 1) Defendant's removal was made in good faith and upon reasonable grounds; 2) Plaintiff's domicile in Georgia during the relevant time period (prior to

---

[2] The bulk of Plaintiff's 13-page Motion attacks irrelevant grounds for removal clearly not intended to be the grounds for Defendant's removal. Although Defendant inadvertently included other statutory citations in the introduction to its Notice of Removal, it is abundantly clear that the basis for Defendant's removal was diversity of citizenship pursuant to 28 U.S.C. §1332. That this is the sole ground for removal is obvious as it is the only ground listed on Defendant's civil cover sheet and the body of the Notice itself. Indeed, this Court had little trouble understanding the basis of Defendant's removal as its Order notes the basis as diversity only. Thus, Defendant will not respond herein to Plaintiff's myriad attacks on defective removal jurisdiction on grounds other than diversity, as such clearly was not the basis for Defendant's removal. Moreover, to the extent Plaintiff's Motion for Remand is directed to any grounds for remand other than lack of subject matter jurisdiction, Plaintiff's Motion is untimely pursuant to 28 U.S.C. §1447(c).

filing suit and prior to the Notice of Remand) was not and is not obvious and requires judicial determination, and 3) Plaintiff failed at every opportunity to disclose what could not have possibly been known to Defendant, namely, that Plaintiff just weeks prior to filing his Complaint, had moved to Georgia.

### A. To Defeat Diversity, Plaintiff Has the Burden of Establishing Changed Domicile in Georgia at the Time He Filed Suit

While the burden of proof of facts necessary for jurisdiction is on the party asserting jurisdiction, when a party asserts a change in domicile, that party must prove the change. *Hendry v. Masonite Corp.*, 455 F. 2d 955, 956 (5th Cir. 1972).[3] An effective change in domicile made before a lawsuit is filed, is accomplished by (1) the act of taking up residence in a difference domicile; (2) the intent to remain there. *Moss v. Perry*, 49 F. 2d 1396, 1399 (5th Cir. 1974). Here, it is undisputed that for nearly five years prior to filing his lawsuit, Plaintiff was domiciled in Florida. Plaintiff now proffers, for the first time, that a month before filing his lawsuit he became domiciled in Georgia and has proffered certain indicia of such domicile in his Motion to Remand and attachments thereto. The Court's task is to determine whether Plaintiff has, both by acts and intention, established legally effective domicile in Georgia. Certainly should the Court make such a determination in this case, Defendant would now have no basis to propose a remand.

However, it is critical to note that diversity and jurisdiction are determined on the basis of the facts **at the time the suit was filed**. *Smith v. Sperling*, 354 U.S. 91, 93 (1957); *Foy v.*

---

[3]   In *Bonner v. City of Pritchard, Albama*, 661 Fed. 2d 1206, 1209 (11th Cir. 1981) (*en banc*), the 11th Circuit adopted as binding precedent all decisions of the former 5th Circuit issued prior to October 1, 1981.

5

*Schantz*, 108 F. 3d 1347, 1348, n. 1 (11th Cir. 1997)(citing *Smith*). Subsequent facts or a change in the domicile of either party do not effect jurisdiction. *Smith* at 93. "This means that certain factors enumerated by plaintiff as indicative of domicile must be ignored by the Court because they are outside the relevant time period." *Simmons v. Skyway of Ocala*, 592 F. Supp. 356 (S.D. Ga. 1984). It is a party's domicile, rather than his residence, that is determinative of citizenship for diversity jurisdiction. *Jigiela v. Jigiela*, 647 F. 2d 561, 563 (5th Cir. 1991). Once a person establishes a domicile, it continues until the person establishes a new domicile. Accordingly, in the Eleventh Circuit, "it is elementary that, to effect a change of one's legal domicile, two things are indispensable: first, residence in the new locality; and second, the intention to remain there.... either without the other is insufficient." *Welsh v. American Sur. Co. of N. Y.* (5th Cir. 1951). 186 Fed. 2d at 17.

Clearly much of the indicia of domicile proffered in Plaintiff's affidavit attached to his Motion occurred ***after*** Plaintiff filed his Complaint and after Defendant filed its Notice of Removal. Indeed, based on Plaintiff's affidavit, prior to filing his complaint on June 11, 1999 Plaintiff only 1) moved to Georgia and moved into a rented home pursuant to an oral agreement with the owners of the residence; 2) obtained an apparently temporary job (which he held for little over a month) and 3) obtained a local telephone number. *See* Affidavit of Plaintiff ¶¶1-5. After filing the Complaint but before the Notice of Removal was filed, Plaintiff also opened a checking account at a local bank and registered his son in school in Georgia. *See* Affidavit of Plaintiff at ¶¶ 6-7. **Only after the Notice of Removal**, did Plaintiff allegedly switch jobs and move to another town in Georgia, sign a one-year lease, pay deposits with local water and electric services, register to vote in Geogia and obtain a Georgia driver's license. *See* Affidavit of Plaintiff

6

at ¶¶ 9-16. All of the things indicating any kind of permanency in Georgia, or any intent to remain for any indefinite period of time in Georgia occurred *after* Plaintiff filed his Complaint and Defendant filed its Notice of Removal.

The precedent of *Hendry v. Masonite Corp.*, 455 F. 2d 955 (5th 1972) is on point. In *Hendry*, the defendant was served on June 2, 1970 with a Mississippi state court complaint and removed the case to federal court alleging that he was domiciled in Chicago, Illinois making the parties diverse for federal jurisdiction. *Id.* at 955. The defendant had been served with the complaint on June 2, 1970. Until May 1, 1970 (one month before), the defendant had been a vice president of the plaintiff's corporation in charge of its operations in Mississippi. However, a few weeks before that on April 13, 1970, the defendant had accepted a company promotion to Chicago and decided to move to Chicago and become a citizen there at some time. Thereafter, the defendant was served on June 2, 1970 and June 13, 1970 in a related case. The Fifth Circuit, upon a motion for remand, looked at the issue of "whether [defendant] had carried out his intention to move his domicile to Illinois prior to [the dates of service of the complaints]." *Id.* at 956.

In his affidavit, the defendant in *Hendry* set forth, *inter alia*, that his promotion became effective May 1, 1970, he occupied his office in Chicago beginning April 29, 1970, signed a contract to sell his home in Mississippi on May 18, 1970, moved into an apartment with most of his clothes and personal effects on May 19, 1970, and his wife and son came up to Chicago to assist in looking for a home to purchase on June 5, 1970. *Id.* However, *only after* receiving service of the complaints did the defendant purchase a home in Illinois in July 1970 and move his furniture into the home in August 1970. *Id.* Based on all of the circumstances, including that

7

the defendant had voted in Mississippi in May 1970, the court found that the defendant **had not** established that he had changed his domicile to Illinois at the time the complaints were served on him for purposes of diversity jurisdiction. *Id.* at 956-957.

Similarly, this Court should only consider those indicia of Georgia domicile which allegedly occurred prior to July 15, 1999. Looking at Plaintiff's affidavit here, it is clear that much less than was proffered in *Hendry* is proffered here by Plaintiff to establish changed domicile in Georgia. Accordingly, Plaintiff has failed to establish domicile in Georgia on the date of removal and diversity exists between Plaintiff's domicile in Florida and Defendant's in Georgia and Delaware.

**B.    Defendant Established by a Preponderance of the Evidence that the Amount in Controversy herein "more likely than not" Exceeds the $75,000 Jurisdictional Requirement for this Court**

While the Eleventh Circuit at one time recognized that "great weight" was to be given to "plaintiff's assessment of the value of plaintiff's case," when plaintiffs were required to specify the exact amount of damages sought, where Plaintiff has made an *unspecified* demand for damages in state court, the removing Defendant must prove only that the amount in controversy more likely than not exceeds the jurisdictional requirement. *Tapscott v. MS Dealer Serv. Corp.*, 77 F. 3d 1533, 1356-1357 (11th Cir. 1996). Here, Defendant has clearly met its burden that the damages sought by Plaintiff in this case are more likely than not going to exceed $75,000. Defendant filed a declaration indicating that as to **back pay alone**, Plaintiff's claim more likely than not will exceed $75,000 since his salary at the date of termination was in excess of $40,000 and Plaintiff will be entitled to and likely will seek at least three years of back pay by the time this case goes to trial. Defendant also pointed out that unlimited compensatory damages and up

8

to $100,000 in punitive damages are available under the FCRA and that numerous courts have awarded jury amounts significantly in excess of $75,000. **Indeed, Plaintiff does not dispute that he intends to seek damages in excess of $75,000.** In the absence of any stipulation that he does not intend to seek less than $75,000, Plaintiff has submitted *no basis* for his assertion that Defendant has failed to show that the amount in controversy will exceed $75,000.

Indeed, the Eleventh Circuit has noted that the only reason that a specific amount stated as the amount in controversy in a plaintiff's complaint is given deference (as opposed to an unspecified amount), is that a plaintiff's attorney has an obligation to investigate his client's case and be candid with the court regarding its demand of damages. *Burns v. Windsor Cout*, 31 F. 3d 1092 (11th Cir. 1994). It is, frankly, hard to believe that Plaintiff's counsel does not intend to ultimately seek at least $75, 000 at trial in this case. Of course, Plaintiff's counsel has never disclosed what they intend to seek only that the amount is in excess of $15,000. Thus, since Defendant has clearly shown the damages sought will more likely than not exceed $75,000, and Plaintiff has filed nothing to rebut such proffer by Defendant, Plaintiff's allegation that Plaintiff has failed to establish that the amount in controversy is valued in excess of $75,000 is unfounded.

### C. Should the Court Determine that Plaintiff Has Established Changed Domicile and Remands this Case, an Award of Fees against Defendant Is Unwarranted

U.S.C. Section 1447(c) provides that the court, in remanding an action, may "require payment of just costs an actual expenses, including attorney fees, incurred as result of removal." While bad faith is not required in the Middle District of Florida for an award of fees, most federal courts have not, in fact, awarded fees absent bad faith or frivolous removal. *See, e.g.*,

9

*Ibrahim v. 1417 N Street Assoc., L.P.*, 950 F. Supp. 406 (D.D.C. 1997.); *Barton v. Lloyd's of London*, 883 F. Supp 641 (M.D. Ala. 1995)(holding no costs should be awarded where the defendant used good faith and relied on information available to them). This is particularly true where a plaintiff's citizenship was unknown and the defendant did not act in bad faith. *Farm Bureau Mut. Ins. Co., Inc. v. Eighty*, 849 F. Supp. 40 (D. Kan. 1994).

Here, the **only possible basis for remand** is if Plaintiff establishes changed domicile in Georgia. Even if the Court finds Plaintiff has met his burden, sanctions of any kind against Defendant are clearly unwarranted since Defendant had a good faith, reasonable belief that Plaintiff still resided in Florida since 1) Plaintiff chose to file his state court claim in Florida (despite his claimed unilateral knowledge that both he and Defendant are citizens of states other than Florida), 2) resided in Florida during the incidents that form the lawsuit, and 3) never disclosed in the Complaint, or at any other opportunity, his alleged changed residency. Thus, Defendant clearly filed the Notice of Removal in good faith based upon information available and known to Defendant. An award of fees and costs against Defendant under the circumstances is clearly unwarranted.

Respectfully submitted.

FORD & HARRISON LLP

By: _____
Tracey K. Jaensch
Florida Bar No. 907057

For the Firm
101 East Kennedy Blvd., Suite 900
Tampa, Florida 33602
Telephone: (813) 261-7800
Facsimile: (813) 261-7899

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by U.S. First Class Mail upon:

G. Joseph Curley and Walter W. Palmer
Gunster, Yoakley, Valdes-Fauli & Stewart, P.A.
777 S. Flagler Drive, Suite 500 East
West Palm Beach, FL 33401

this 31st day of August, 1999.

_____
Attorney